United States Court of Appeals,

Fifth Circuit.

No. 95-60742.

Jawaid ANWAR, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

March 13, 1997.

Appeal from the Board of Immigration Appeals.

Before JOLLY, JONES and PARKER, Circuit Judges.

PARKER, Circuit Judge:

Jawaid Anwar ("Anwar"), a citizen of Pakistan, petitions this court for review of his due process contention that the Board of Immigration Appeals ("BIA") denied him due process in not granting him an extension of time to file a brief before it affirmed the decision of the Immigration Judge ("IJ") denying Anwar asylum and withholding of deportation. For the reasons given below, we grant the petition and affirm the BIA.

FACTS AND PROCEEDINGS BELOW

Anwar, a 45-year-old citizen of Pakistan, entered the United States on January 6, 1983 as a nonimmigrant visitor with authorization to remain for six months. In an Order to Show Cause dated April 19, 1993, the Immigration and Naturalization Service ("INS") charged Anwar with deportability under section 241(a)(1)(B) of the Immigration and Nationality Act ("INA" or "the Act"), 8 U.S.C. § 1251(a)(1)(B), for remaining in the United States for a time longer than permitted, and also under section 241(a)(2)(A)(ii)

1

of the Act, 8 U.S.C. § 1251(a)(2)(A)(ii), for convictions after entry of two crimes involving moral turpitude not arising out of a single scheme of criminal conduct.

After a deportation hearing, the IJ found Anwar deportable as charged. The INS had submitted records from the State of Virginia showing the following convictions: (1) sexual battery (1985) (one-year sentence with six months suspended); and (2) credit card theft and fraudulent use of a credit card (1992) (five-year suspended sentence).

Anwar applied for asylum and withholding of deportation under section 243(h) of the Act, 8 U.S.C. § 1253(h), and section 208(a) of the Act, 8 U.S.C. § 1158(a). On July 17, 1995, the IJ denied Anwar's application for asylum and also found that he was ineligible for the mandatory exercise of § 243(h)'s withholding of deportation. The IJ found that Anwar's sexual battery conviction was for a "particularly serious crime" and that Anwar was "a danger to the community," making him ineligible under the Act for § 243(h)'s withholding of deportation.

Regarding Anwar's asylum application, the IJ found that Anwar did not establish himself as a "refugee" under 8 U.S.C. § 1101(a)(42)(A) as required to warrant consideration for a discretionary grant of asylum under § 208 of the Act, 8 U.S.C. § 1158(a). Anwar testified that while in Pakistan, people from different ethnic groups had abused him verbally and physically because of his Christian religion and political views. Anwar also testified that he did not convert to Christianity until after his

2

entry into the United States.  Anwar attested to his suspicions concerning the deaths of family members who were members of the Mohajir Quami Movement ("MQM"), a Pakistani political party.  He himself is not a member of MQM. He also testified that he had never been detained, interrogated, convicted or sentenced to jail while in Pakistan.  In his decision, the IJ referenced the State Department's "country report" on Pakistan which stated that MQM is a legal political party in Pakistan that has won 27 out of a total of 99 seats in the providential assembly.

Anwar appealed the IJ's decision pro se to the BIA. He was given until August 23, 1995 to submit a brief in support of his appeal to the BIA. On August 8, 1995, the INS sent Anwar a copy of the hearing transcript.  On August 24, 1995, Anwar filed a "Motion to Request Extension of Time to File Appeal Brief," pursuant to 8 C.F.R §§ 3.3(c) and 242.8, seeking an extension of time until September 25, 1995 on the basis that he had retained counsel and his attorney now required preparation time.  On August 24, 1995, an IJ denied Anwar an extension of time to file a brief with the BIA, noting that, "The motion for an extension of time was received after [the brief] was due."

On September 13, 1995, the BIA affirmed the IJ's decision for the reasons set forth by the IJ. Anwar now appeals to this court on due process grounds the BIA's denial of an extension of time to file his brief, having filed a timely notice of appeal in December of 1995.

## DISCUSSION

3

## A. Jurisdiction

During the pendency of Anwar's appeal to this Court, the Antiterrorism and Effective Death Penalty Act of 1996[1] ("AEDPA") was enacted. It amended our jurisdiction over final orders of the BIA so as to preclude our review of certain matters. *See Mendez-Rosas v. INS,* 87 F.3d 672 (5th Cir.1996), *cert. denied,*--- U.S. ----, 117 S.Ct. 694, 136 L.Ed.2d 617 (1997). After the AEDPA's enactment, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act[2] ("IIRIRA"), which further amended the source of our jurisdiction. The fact that an appeal of a BIA final deportation order was pending before this court at the time that the two Acts were enacted does not hinder the Acts' withdrawal of jurisdiction. The two Acts' jurisdiction provisions are retroactive, and apply to appeals as governed by their various effective dates. *Pichardo v. INS,* 104 F.3d 756, 757-58 (5th Cir.1997); *see also Mendez-Rosas,* 87 F.3d 672. In *Pichardo,* we explained the joint operation of the AEDPA amendments and a currently effective IIRIRA amendment[3] as applied to the source of

---

[1]The Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. 104-132, 110 Stat. 1214 (April 24, 1996).

[2]The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104-208, 110 Stat. 3009, was signed into law by President Clinton on September 30, 1996.

[3]That amendment is IIRIRA § 306(d). It contained an effective date "as if included in the enactment of the Antiterrorism and Effective Death Penalty Act of 1997 (Public Law 104-132)." IIRIRA § 306(d); *see also Pichardo,* 104 F.3d 756, 758; IIRIRA § 306(c) (as amended by P.L. No. 104-302, 110 Stat. 3656, § 2(1) (Oct. 11, 1996)) & IIRIRA § 309(a) & (c) (explaining effective dates of IIRIRA amendments).

4

our jurisdiction.

The petition for review in this case concerns a due process issue in the context of an asylum claim. The issue presented initially is whether we retain jurisdiction of such an appeal. Because this appeal does not concern either a particular deportation decision or the determination of an application for relief, the amended judicial review provisions do not bar our review as they did in *Pichardo*. Even under the AEDPA and the previously referenced amendment of the IIRIRA that is effective for purposes of this case, we retain jurisdiction for issues such as due process challenges, as presented here, that are not involved in the administrative deportation decision. *See McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479, 492-94, 111 S.Ct. 888, 896-97, 112 L.Ed.2d 1005 (1991) (in the face of a jurisdiction withdrawal statute, judicial review was retained for constitutional and procedural issues because withdrawal concerned review of administrative determinations and administrative appeals process did not address the claimants' procedural and constitutional claims).

Because there is a well-settled presumption favoring interpretation of statutes to allow judicial review of administrative action, the Supreme Court has explained that judicial review of such action will be precluded only when congressional intent to preclude such review is presented with clear and convincing evidence. *Reno v. Catholic Social Services, Inc.,* 509 U.S. 43, 63-64, 113 S.Ct. 2485, 2499, 125 L.Ed.2d 38

5

(1993) (citing cases).  There is no such clear and convincing evidence in the statute before us that Congress intended to preclude constitutional, specifically, due process, questions from our review.  Nothing in the amended statute before us suggests that Congress's preclusion of judicial review of

> any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 241(a)(2)(A)(I)[,]

AEDPA, § 440(a) as amended by IIRIRA § 306(d);  *see also Pichardo,* 104 F.3d 756, 758, extended to include constitutional questions. Rather, it is evident that Congress intended to preclude from our review those matters particular to the agency's discretion and expertise,  *i.e.,*  matters involved in determinations of deportability.  Section 440(b) of the AEDPA defines the "final order of deportation" for which judicial review is precluded.

> ... the order of the special inquiry officer, or other such administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is deportable, concluding that the alien is deportable or ordering deportation.

AEDPA § 440(b), 8 U.S.C. § 1101(a)(47).  In addition, the BIA's jurisdiction is limited to appellate review of the following: exclusion decisions;  deportation determinations;  discretionary decisions regarding waiver of inadmissibility for certain convicted criminals  under  §  212(c)  of  the  Act;  decisions  regarding administrative  fines  and  penalties;  decisions  on  preference classification  petitions;  decisions  on  nonimmigrant  visa applications under § 212(d)(3) of the Act;  bond, parole or

6

detention decisions; decisions regarding adjustment of status; decisions of asylum officers on applications for asylum and withholding of deportation by alien crewmen and stowaways; and decisions related to "temporary protected status." 8 C.F.R. § 3.1(b)(1)-(10); *see also Espinoza-Gutierrez v. Smith,* 94 F.3d 1270, 1273-74 (9th Cir.1996); *Castaneda-Suarez v. INS,* 993 F.2d 142, 144 (7th Cir.1993) (noting that BIA lacks authority to adjudicate constitutional issues).

### B. Due Process Claim

Anwar does not challenge the finding of deportability, nor does he challenge the IJ's denial of asylum and withholding of deportation. His contention is that he was denied due process because, pursuant to regulations regarding deadlines for filing of briefs, the BIA did not give him an extension of time to file a brief appealing the decision of the IJ.

We review due process challenges on a *de novo* basis. *Ogbemudia v. INS,* 988 F.2d 595, 598 (5th Cir.1993). It is clearly established that the Fifth Amendment of the United States Constitution entitles aliens to due process of law in deportation proceedings. *Animashaun v. INS,* 990 F.2d 234, 238 (5th Cir.) (citing *Reno v. Flores,* 507 U.S. 292, 305-06, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993)), *cert. denied,* 510 U.S. 995, 114 S.Ct. 557, 126 L.Ed.2d 458 (1993). Due process challenges to deportation proceedings require an initial showing of substantial prejudice.[4]

---

[4]We note that because Anwar does not assert procedural error correctable by the BIA, but rather, in essence, a challenge to the regulations regarding the submission of briefs, his claim is not

*Howard v. INS,* 930 F.2d 432, 436 (5th Cir.1991); *Calderon-Ontiveros v. INS,* 809 F.2d 1050, 1052 (5th Cir.1986).

In order for Anwar to show that the BIA's not extending the deadline for the filing of his brief caused him substantial prejudice, Anwar must make a prima facie showing that he was eligible for asylum and that he could have made a strong showing in support of his application. *See Miranda-Lores v. INS,* 17 F.3d 84, 85 (5th Cir.1994); *Figeroa v. United States INS,* 886 F.2d 76, 79 (4th Cir.1989). Anwar's contention must be denied because he has not shown the requisite prejudice.

The IJ reasoned that Anwar's sexual battery conviction constituted a "particularly serious crime" which serves as a bar to mandatory withholding of deportation. *See* 8 U.S.C. § 1253(h). Anwar has not offered any support that he suffered actual prejudice in relation to his application. He made no attempt to demonstrate that an extension of time to file his brief with the BIA would have allowed him to demonstrate that his sexual battery conviction was not a "particularly serious crime" barring relief under § 243(h). He also failed to present a prima facie case for withholding of deportation under § 243(h), as required to demonstrate prejudice. *See Miranda-Lores,* 17 F.3d at 85; *Figeroa,* 886 F.2d at 79.

---

subject to an exhaustion requirement. *See* 8 U.S.C. § 1105a(c); *Koroma v. INS,* 83 F.3d 427, 1996 WL 207142, at *2 (9th Cir.1996)(due process claims generally exempt from exhaustion doctrine because not within purview of BIA, except for procedural errors which are within BIA's jurisdiction); *Rashtabadi v. INS,* 23 F.3d 1562 (9th Cir.1994) (same); *see also Ogbemudia v. INS,* 988 F.2d 595 (5th Cir.1993) (not subjecting alien's due process claim to exhaustion requirement).

In order to be considered for a discretionary grant of asylum under § 208(a) of the Act, an alien must qualify as a "refugee" under 8 U.S.C. § 1101(a)(42)(A). *See* 8 U.S.C. § 1158(a). A refugee is defined as an alien who is unwilling or unable to return to his country of nationality because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. § 1101(a)(42)(A). As Anwar clearly failed to present a prima facie case that he is a refugee, *see Guevara Flores v. INS,* 786 F.2d 1242 (5th Cir.1986) (reviewing requirements for asylum), *cert. denied,* 480 U.S. 930, 107 S.Ct. 1565, 94 L.Ed.2d 757 (1987), he suffered no prejudice by the BIA declining to extend his deadline for the filing of his brief. *See Miranda-Lores,* 17 F.3d at 85; *Figeroa,* 886 F.2d at 79.

## CONCLUSION

For the foregoing reasons, the petition is GRANTED and the BIA order is AFFIRMED.